UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY HOOVER,

       Plaintiff,                                              Case No. 19-cv-11656

v.                                                        Paul D. Borman
                                                          United States District Judge

MICHIGAN DEPARTMENT
OF LICENSING AND
REGULATORY AFFAIRS,

       Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND DECLARATORY RELIEF (ECF NO. 2)

On June 5, 2019, Plaintiff filed her Verified Complaint for Declaratory Judgment and Injunctive Relief. (ECF No. 1.) On that same date, Plaintiff filed an Emergency Motion for *Ex Parte* Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief. (ECF No. 2.) The Court held a telephonic status conference with all parties on June 11, 2019, and established a briefing schedule on Plaintiff's Emergency Motion. Defendant filed a Response on June 21, 2019. (ECF No. 8.) Plaintiff filed a Reply on July 12, 2019. (ECF No. 14.) The Court held a hearing today, July 17, 2018. For the reasons that follow, the Plaintiff's Emergency

1

Motion is DENIED.

**INTRODUCTION**

In this action, Plaintiff asks this Court to require the Defendant Michigan Department of Licensing and Regulatory Affairs ("LARA") to "modify and extend" certain temporary and now-expired Emergency Rules that were previously put in place under the Medical Marihuana Facilities Licensing Act ("MMFLA").[1] Plaintiff seeks an extension of these expired Emergency Rules so that she can continue to purchase untested marihuana from a licensed dispensary. In short, under Michigan law, licensed provisioning centers were permitted to sell only safety-tested marihuana and to purchase product only from licensed growers and processors. Under the expired Emergency Rules, which expired on March 31, 2019, licensed provisioning centers were able to purchase untested product outside the regulated system (as pertinent here from "caregivers" who purchase and supply untested product) without facing disciplinary action. With the expiration of the Emergency Rules, licensed provisioning centers are no longer able to purchase and sell untested marihuana outside the regulatory system. As a result, according to the Plaintiff's Complaint, the caregivers have no market for the product they obtain and the provisioning centers are

---

[1] "Marihuana" is the spelling most commonly used in the Michigan statutes and regulations. The Court will use that spelling unless a specific alternate spelling is indicated.

unable to keep up with demand if required to sell only tested product from licensed processors and growers. As a consequence, Plaintiff alleges, she has been without access to her medical marihuana medication since May 15, 2019. (ECF No. 16, July 17, 2019 Affidavit of Sherry Hoover ¶ 8.)

Plaintiff claims that as a consequence of the expiration of the Emergency Rules, she is unable to obtain the marihuana products she needs to treat the symptoms of her cancer. Plaintiff argues that "allowing the Emergency Rules to expire is a clear violation of Plaintiff's due process rights." (Pl.'s Aff. ¶¶ 5-9; Pl.'s Mot. 14, PgID 44.) Plaintiff argues that she has a license to obtain medical marihuana and her right to obtain medical marihuana is now being impeded by LARA. Plaintiff also suggests that her due process rights have been violated because her inability to obtain medical marihuana "constitutes a deprivation of life, quite literally." (Pl.'s Mot. 14, PgID 44.)

The State responds that Plaintiff has no likelihood of success on the merits of her claims because: (1) LARA is absolutely immune to suit under the Eleventh Amendment, (2) the Court lacks subject matter jurisdiction because the Complaint fails to allege a colorable federal question, (3) the Plaintiff lacks standing, (4) Plaintiff's claims lack substantive merit, and (5) the Court should abstain from reviewing her claims. The State also asserts that Plaintiff has not established a threat of irreparable injury and the public interest weighs against granting an injunction.

## I. FACTUAL BACKGROUND[2]

Marihuana is an illegal Schedule 1 controlled substance under federal law. 21 U.S.C. § 812(c). Marihuana is also listed as a schedule 1 controlled substance under Michigan law, Mich. Comp. Laws § 333.7212, with the exception that the drug is categorized in schedule 2 "only for the purposes of treating a debilitating medical condition." Mich. Comp. Laws § 333.7214(e).

In 2008, voters passed the Michigan Medical Marihuana Act ("MMMA"), Mich. Comp. Laws § 333.26421 *et seq.*, by ballot initiative. The MMMA did not create an affirmative right to use or possess marihuana but created protections under state law for medical use to qualifying patients and their caregivers who comply with the MMMA's requirements. Mich. Comp. Laws §§ 333.26422(b); 333.26424. LARA was charged with administering the MMMA and maintaining a cardholder registry. Mich. Comp. Laws § 333.26426.

In 2016, the Michigan Legislature enacted the Medical Marihuana Facilities Licensing Act ("MMFLA") "to license and regulate medical marihuana [facilities]."

---

[1] The facts in this background section have been taken directly from the Defendant's responsive brief, which gives a detailed history of the background of the Michigan medical marihuana regulatory scheme. Plaintiff has registered no disagreement with the undisputed historical facts in this background section. In any event, because the Plaintiff has no likelihood of success on the merits of her claims based upon a purely legal question not dependent in any manner on any factual disputes, any disagreement with these facts would not alter the Court's determination.

Mich. Comp. Laws § 333.27101 *et seq*. The Medical Marihuana Licensing Board ("the Board") was created within LARA and charged with implementing and enforcing the MMFLA. Mich. Comp. Laws § 333.27301(1). The MMFLA provides protections for those granted a license and engaging with activities within the scope of the MMFLA. Mich. Comp. Laws § 333.27201. Under the MMFLA, licensed provisioning centers are authorized to purchase safety-tested marihuana only from licensed growers and processors and are authorized to sell it in limited quantities to patients and caregivers who are registered under the MMMA.

In March 2019, Governor Gretchen Whitmer issued an executive order abolishing the Board and LARA's Bureau of Marihuana Regulation ("BMR") effective April 30, 2019. Mich. Comp. Laws 333.27001(1)(b), (e). The Governor's Executive Order transferred all powers, duties, functions and responsibilities of LARA, BMR, and the Board to a newly created Marijuana Regulatory Agency ("MRA"). Mich. Comp. Laws § 333.27001(1). The MRA was "created as a Type I agency within the Department of Licensing and Regulatory Affairs." Mich. Comp. Laws § 333.27001(1)(a), and all of LARA's "authorities, powers, duties, functions, and responsibilities . . . under the [MMA, MMFLA]" among other statutes were transferred to the new MRA. Mich. Comp. Laws § 333.27001(1)(d). The MRA exercises its powers and duties independent of LARA's direction. "When any board,

5

commission, or other agency is transferred to a principal department under a type I transfer, that board, commission or agency shall be administered under the supervision of that principal department. Any board, commission or other agency granted a type I transfer shall exercise its prescribed statutory powers, duties and functions of rule-making, licensing and registration including the prescription of rules, rates, regulations and standards, and adjudication independently of the head of the department. Under a type I transfer all budgeting, procurement and related management functions of any transferred board, agency or commission shall be performed under the direction and supervision of the head of the principal department." Mich. Comp. Laws § 16.103.

LARA issued a series of Emergency Rules beginning in late 2017 and continuing through a final set of Emergency Rules which expired in March, 2019. The Emergency Rules provided that licensed provisioning centers were able to purchase and sell untested product outside the regulated system without facing disciplinary action. With the expiration of the Emergency Rules, licensed provisioning centers are no longer able to purchase and sell untested marihuana outside the regulatory system. This, Plaintiff claims, has resulted in her inability to access her medical marihuana medications.

A different plaintiff seeking the same relief that Plaintiff seeks here previously

filed suit in the Michigan courts, but was denied relief. In *The Curing Corner, LLC v. Mich. Dept. Of Licensing and Reg. Affairs*, No. 19-000052-MZ (Mich. Ct. Of Claims, Apr. 30, 2019), Judge Stephen L. Borello explains in his opinion that the Curing Corner was asking that court to "essentially require LARA to extend previous iterations of now-expired emergency rules." (ECF No. 9-1, Def.'s Resp. Appendix Ex. 1, April 30, 2019 Opinion and Order at 10, PgID 240.) In his opinion Judge Borello states: "[T]he Court is without authority to grant the relief plaintiff Curing Corner requests and it will not dictate to LARA procedures for the sale of marijuana." (*Id.* at 10-11, PgID 240-41.) Plaintiff the Curing Corner was represented by the same counsel representing Plaintiff here, Ms. Donovan. No appeal was ever taken from Judge Borello's opinion denying the very relief sought here. Instead, Plaintiff brought her claims to this Court and sued LARA – a state agency.

## II.   LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). Plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly

7

demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). When considering a motion for injunctive relief, the Court must balance the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion . . . ." *Leary*, 228 F.3d at 739. Plaintiff must do more than just "create a jury issue," and must persuade the court that it has a likelihood of succeeding on the merits of its claims. *Id*. "This is because the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Id*. (internal quotation marks and citation omitted) (alteration in original). These same factors are considered in evaluating whether to issue a temporary restraining order. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

"Although no one factor is controlling, a finding that there is simply no

likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). "While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). *See also Monsanto Co. v. Manning*, 841 F.2d 1126, at *4 (6th Cir. 1988) (table case) ("It is error to grant a preliminary injunction if the party has no chance or a very slight chance of prevailing on the merits, no matter how strong the balance of irreparable harms may incline in favor of the party seeking the injunction."); *Fialka-Feldman v. Oakland University Bd. of Trustees*, No. 08-cv-14922, 2009 WL 275652, at *1, *5 (E.D. Mich. Feb. 5, 2009) (denying preliminary injunction sought against a state university that was a state agency entitled to Eleventh Amendment immunity and observing that "a preliminary injunction may not issue where there is "simply no likelihood of success on the merits . ... .") (citing *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

### III. ANALYSIS

Plaintiff alleges that depriving the licensed provisioning centers of the ability to sell untested caregiver-produced medical marijuana without facing possible discipline under the Michigan regulatory system has disrupted the supply chain of

medical marijuana in Michigan and resulted in a chaotic shortage of available medical marijuana for patients like the Plaintiff who have been granted a license to purchase medical marijuana. According to the Plaintiff, with the expiration of the Emergency Rules, in order for caregivers to continue to sell their product to licensed facilities, the caregiver products must first be tested at a licensed grow or processing center, of which there are only four in Michigan, and then transported back to the licensed provisioning center, resulting in unacceptable and "immoral" delay of delivery of marijuana products to patients such as the Plaintiff. (Mot. 4, ¶¶ 9-15, PgID 34-36.) Plaintiff places the blame on LARA, asserting that it is a "dereliction of duty," and "inappropriate and cavalier" of LARA, "to continue to prohibit the sale of caregiver-products directly to licensed provisioning centers in Michigan," which has caused "a gap in the supply chain which has resulted in an almost immediate and lengthy shutdown of most provisioning centers in Michigan" that are unable to obtain enough tested product to keep up with demand. (Mot. 7, ¶ 19, PgID 37.) Plaintiff asserts that she is forced to "choose between going without medical marijuana and purchasing it through the black market." (Mot. 8, ¶ 20, PgID 38.) According to Plaintiff, patients like her are currently willing to sign waivers when purchasing untested marijuana from a licensed facility and want to be able to continue purchasing marijuana this way.

More specifically, in her Complaint Plaintiff alleges that she has Stage 4 cancer and has been prescribed medical marijuana by her doctor. Her medical marijuana medicines include CBD/THC gummy cubes, THC extreme medicated pain balm, cannabis flower Sunshine Kush, Purple Punch Rick Simpson Oil ("RSO") and specialty ribbon chews 200mg THC chill mediated lozenges. Plaintiff alleges that the lack of access to her medical marijuana regimen affects her health and well-being by failing to alleviate her pain, nausea, insomnia and decreased appetite from chemotherapy treatments. She alleges that her health and quality of life are deteriorating. (Compl. ¶¶ 8-11.) Plaintiff alleges that the now-expired Emergency Rules allowed licensed provisioning centers to obtain and sell untested medical marijuana products, with patient waivers, until March 31, 2019. (Compl. ¶ 15.) Plaintiff alleges that the "de minimus" number of grower, processor, transport, and testing facilities that have been approved by LARA to operate in Michigan are insufficient to create supply to meet existing demand for medical marijuana products. Plaintiff alleges that without an immediate increase in supply of untested product, "the medical marijuana industry will die." (Compl. ¶¶ 18-23.)

Plaintiff alleges that "medical marijuana continues to be sold to unlicensed facilities, who are currently unregulated and need not purchase tested marijuana under the MMFLA." Plaintiff alleges that "under LARA's regulations, Plaintiff's purchase

from, or even presence in, an unlicensed marijuana operation could risk her losing her medical marijuana card." Plaintiff states that "LARA can cure the issue for Plaintiff by simply modifying and extending the Emergency Rules to December 31, 2019, to allow for Plaintiff to purchase untested medical marijuana product from licensed caregivers in Michigan directly from licensed provisioning centers." (Compl. ¶¶ 31-33.) Plaintiff asserts three Counts in her Complaint: Count I – Violation of the Constitutional Right to Due Process (Declaratory Judgment); Count II – Violation of the State Right to Due Process (Declaratory Judgment); Count III – Violation of the Michigan Medical Marihuana Act).

The two pages of Plaintiff's brief in support of her motion for preliminary injunction addressing the most significant prong of the preliminary injunction analysis – the likelihood of success on the merits of her claims against LARA – are devoted largely to recitations of the harm that is flowing from LARA's refusal to extend the emergency rules so that Plaintiff can continue to purchase untested marijuana from licensed provisioning centers. The *one* conclusory paragraph of her brief that addresses the critically important issue of the right that she claims to have been procedurally (or perhaps substantively – it is unclear and she offers no elucidation) deprived of cites no authority for the proposition that Plaintiff has a protected property right "to obtain medical marijuana." (Mot. 14, PgID 44.) She implies that her

medical marijuana card gives her a "lawful right to obtain medical marijuana, which is now being impeded by LARA." (*Id.*) She also suggests, in a single conclusory, unsupported sentence that her "due process rights have been violated as the inability to purchase medical marijuana constitutes a deprivation of life, quite literally." (*Id.*) Plaintiff closes this brief discussion of this most important prong of the preliminary injunction analysis with the equally conclusory statement that she has "certainly" raised serious questions going to the merits of her claims to make them a "fair ground for litigation." (*Id.*)

Defendant offers several responses to Plaintiff's claims: (1) Plaintiff's claims are barred because LARA is immune from suit; (2) the Court lacks subject matter jurisdiction over Plaintiff's claims because they fail to allege a colorable federal question; (3) Plaintiff lacks standing to bring this action because her injuries are not traceable to or redressable by LARA; and (4) the Court should abstain from interfering in a complex state regulatory scheme. In her Reply, which the Court had to request from the Plaintiff after she missed the deadline for filing a Reply brief in support of her request for the extraordinary remedy of preliminary injunctive relief, Plaintiff does not address a single one of the Defendant's arguments. The Reply is devoted entirely to the issue of irreparable harm which, for the reasons discussed *infra*, the Court need not address. Plaintiff offered additional argument at the July 18, 2019 hearing that

was not presented in any of her briefs, none of which rebutted the undisputed and dispositive fact that LARA is a state agency entitled to Eleventh Amendment immunity, making it impossible for Plaintiff to establish a likelihood of success on the merits of her claims against LARA.

It is undisputed that LARA is a state agency entitled to absolute immunity from suit under the Eleventh Amendment. The Sixth Circuit long ago acknowledged the breadth of this immunity in *Thiokol Corp. v. Department of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376 (6th Cir. 1993):

> The Eleventh Amendment provides:
>
>> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.
>
> U.S. Const. amend. XI. This immunity is far reaching. It bars *all* suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100–01, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), by citizens of another state, foreigners or its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

987 F.2d at 381 (emphasis added). *See Proctor v. Board of Medicine*, 718 F. App'x 325, 327 (6th Cir. 2017) (holding that the Michigan Department of Licensing and Regulatory Affairs and the Board of Medicine were "clearly agencies or departments of the State of Michigan" and were "entitled to immunity under the Eleventh

Amendment"); *Williams v. Mich. Bd. of Dentistry*, 39 F. App'x 147, 148-49 (6th Cir. 2002) (observing that "unless immunity is expressly waived, a state and its agencies are immune from an action for damages and injunctive relief, and in some cases even declaratory relief, in federal court" and that "the Eleventh Amendment forbids federal courts from intruding upon state sovereignty by dictating the manner in which state officials should comply with state law") (internal quotation marks and citations omitted). "There are three exceptions to a state's sovereign immunity." *Puckett v. Lexington-Fayette Urban County Government*, 833 F.3d 590, 598 (6th Cir. 2016) (noting the three narrow exceptions to Eleventh Amendment immunity as "(1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, applies; and (3) when Congress has clearly and expressly abrogated the state's immunity.") (internal citations omitted). None of these exceptions is claimed to or does apply here.

Because Plaintiff has *no* likelihood of success on the merits of her claims against LARA, the Court cannot grant preliminary injunctive relief and need not examine the remaining preliminary injunction factors. Indeed, it would be error for the Court to issue a preliminary injunction in the face of an impossibility of success on the merits: "While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood

of success on the merits must be reversed." *Miller*, 103 F.3d at 1249.

## IV. CONCLUSION

Because Plaintiff has no likelihood of success on the merits of her claims because the Defendant LARA is a state agency entitled to absolute Eleventh Amendment immunity, the Court must and does DENY the motion for preliminary injunctive relief.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 18, 2019