UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY HOOVER,

        Plaintiff,                      Case No. 19-cv-11656

v.                                   Paul D. Borman
                                   United States District Judge

MICHIGAN DEPARTMENT
OF LICENSING AND
REGULATORY AFFAIRS,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 10) AND DENYING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT

On June 5, 2019, Plaintiff Sherry Hoover filed her Verified Complaint for Declaratory Judgment and Injunctive Relief against Defendant Michigan Department of Licensing and Regulatory Affairs. (ECF No. 1.) That same day, Plaintiff also filed an Emergency Motion for *Ex Parte* Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief (ECF No. 2, Pl.'s TRO), which was subsequently denied in an Opinion and Order issued on July 18, 2019, because the Court found that Plaintiff had demonstrated no likelihood of success on the merits of her claims. (ECF No. 23.) Defendant now moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The matter is fully briefed and the

Court held a hearing on January 14, 2019. For the reasons that follow, the Court GRANTS Defendant's motion to dismiss and DENIES Plaintiff's request in her response brief for leave to amend her Complaint.

**INTRODUCTION**

In this action, Plaintiff Sherry Hoover asks this Court to require the Defendant Michigan Department of Licensing and Regulatory Affairs ("LARA") to "modify and extend" certain temporary and now-expired Emergency Rules that were previously put in place under the Medical Marihuana Facilities Licensing Act ("MMFLA").[1] Plaintiff seeks an extension of these expired Emergency Rules so that she can continue to purchase untested marihuana from a licensed dispensary.

In short, under Michigan law, licensed provisioning centers were permitted to sell only safety-tested marihuana and to purchase product only from licensed growers and processors.[2] Pursuant to two Board resolutions setting a March 31, 2019 deadline, licensed provisioning centers were able to purchase untested product outside the regulated system (as pertinent here from "caregivers" who purchase and

---

[1] "Marihuana" is the spelling most commonly used in the Michigan statutes and regulations. The Court will use that spelling unless a specific alternate spelling is indicated.

[2] As discussed more fully below, Defendant explains that the Emergency Rules under the MMFLA did not allow provisioning centers to obtain marihuana products directly from caregivers or sell it to patients without prior testing. Rather, the only authority Plaintiff cites for such activities is in Board resolutions adopted in January and March 2019.

supply untested product) without facing disciplinary action. After the March 31, 2019 deadline, licensed provisioning centers are no longer able to purchase and sell untested marihuana outside the regulatory system. As a result, according to the Plaintiff's Complaint, the caregivers have no market for the product they obtain and the provisioning centers are unable to keep up with demand if required to sell only tested product from licensed processors and growers. As a consequence, Plaintiff alleges, she has been without access to her medical marihuana medication since May 15, 2019. Plaintiff asks this Court to order LARA to "modify and extend" long-expired emergency rules to enable her to purchase marihuana outside the bounds of state law.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **Overview of Marihuana Regulations in Michigan**[3]

Marihuana is an illegal Schedule 1 controlled substance under federal law. 21 U.S.C. § 812(c). Marihuana is also listed as a schedule 1 controlled substance under Michigan law, Mich. Comp. Laws § 333.7212(1)(c), with the exception that the drug is categorized in schedule 2 "if it is manufactured, obtained, stored, dispensed,

---

[3] The facts in this section have been taken directly from the Defendant's Motion to Dismiss, which gives a detailed history of the background of the Michigan medical marihuana regulatory scheme. Plaintiff has registered no disagreement with the undisputed historical facts in this background section.

possessed, grown, or disposed of in compliance with this act and as authorized by federal authority." Mich. Comp. Laws §§ 333.7212(2), 333.7214(e).

In 2008, voters passed the Michigan Medical Marihuana Act ("MMMA"), Mich. Comp. Laws § 333.26421 *et seq.*, by ballot initiative. The MMMA did not create an affirmative right to use or possess marihuana but created protections under state law for medical use to qualifying patients and their caregivers who comply with the MMMA's requirements. Mich. Comp. Laws §§ 333.26422(b); 333.26424. LARA was charged with administering the MMMA and maintaining a cardholder registry. Mich. Comp. Laws § 333.26426.

In 2016, the Michigan Legislature enacted the Medical Marihuana Facilities Licensing Act ("MMFLA") "to license and regulate medical marihuana [facilities]." Mich. Comp. Laws § 333.27101 *et seq*. The Medical Marihuana Licensing Board ("the Board") was created within LARA and charged with implementing and enforcing the MMFLA. Mich. Comp. Laws § 333.27301(1). The MMFLA provides protections for those granted a license and engaging with activities within the scope of the MMFLA. Mich. Comp. Laws § 333.27201. Under the MMFLA, licensed provisioning centers are authorized to purchase safety-tested marihuana only from licensed growers and processors and are authorized to sell it in limited quantities to patients and caregivers who are registered under the MMMA. Mich. Comp. Laws § 333.27504.

In November 2018, Michigan voters initiated legislation to legalize non-medical marihuana use, possession, cultivation, and sale by adults age 21 and over. Mich. Comp. Laws § 333.27951 *et seq.* The Michigan Regulation and Taxation of Marihuana Act ("MRTMA") sets possession and use limits and creates an additional layer of state licensing and regulation for commercial marihuana establishments. Mich. Comp. Laws §§ 333.27955, 333.27959. The State issued the first five recreational marihuana licenses on November 19, 2019, and, according to Defendant's supplemental brief, the MRA has recently issued additional medical marihuana facility licenses as well as adult-use (recreational) marihuana establishment licenses. (See ECF Nos. 32-2 and 32-3.)

LARA issued four sets of emergency rules under the MMFLA, in December 2017, May 2018, September 2018 and October 2018, the last set of which expired in March 2019. (ECF Nos. 10-2 through 10-5.) None of these emergency rules allowed provisioning centers to obtain marihuana products directly from caregivers or sell it to patients without prior testing. (*See id.*) According to Plaintiff, however, the Emergency Rules allowed LARA and the Board to adopt two resolutions, one on January 16, 2019 and another on March 21, 2019. (Compl. ¶¶ 15-16; ECF Nos. 10-7 to 10-8.) The January 16, 2019 Resolution expressed the Board's intent to not discipline a licensee for purchasing "marihuana products that have not been tested in full compliance with the law and administrative rules," and selling the untested

products to patients, if the licensee obtains the patient's consent in writing on a LARA-provided form, until March 31, 2019. (Compl. ¶ 15; ECF No. 10-7 at 2.) The March 21, 2019 Resolution reconfirmed the March 31, 2019 deadline. (Compl. ¶ 16; ECF No. 10-8.)

In March 2019, Governor Gretchen Whitmer issued an executive order abolishing the Board and LARA's Bureau of Marihuana Regulation ("BMR") effective April 30, 2019. Mich. Comp. Laws § 333.27001(1)(b), (e). The Governor's Executive Order transferred all powers, duties, functions and responsibilities of LARA, BMR, and the Board to a newly created Marijuana Regulatory Agency ("MRA"). Mich. Comp. Laws § 333.27001(1). The MRA was "created as a Type I agency within the Department of Licensing and Regulatory Affairs." Mich. Comp. Laws § 333.27001(1)(a), and all of LARA's "authorities, powers, duties, functions, and responsibilities . . . under the [MMA, MMFLA, MRTMA]" among other statutes were transferred to the new MRA. Mich. Comp. Laws § 333.27001(1)(d). The MRA exercises its powers and duties independent of LARA's direction. "When any board, commission, or other agency is transferred to a principal department under a type I transfer, that board, commission or agency shall be administered under the supervision of that principal department. Any board, commission or other agency granted a type I transfer shall exercise its prescribed statutory powers, duties and functions of rule-making, licensing and registration

including the prescription of rules, rates, regulations and standards, and adjudication *independently of* the head of the department. Under a type I transfer all budgeting, procurement and related management functions of any transferred board, agency or commission shall be performed under the direction and supervision of the head of the principal department."  Mich. Comp. Laws § 16.103 (emphasis added).

### B.    Plaintiff's Allegations

Plaintiff alleges that she suffers from Stage 4 cancer and that her doctor prescribed medical marihuana for her.  (Compl. ¶¶ 7-8.)  Plaintiff obtained a medical marihuana patient identification card from LARA.  (*Id.* ¶ 7.)  Her medical marijuana medicines include CBD/THC gummy cubes, THC extreme medicated pain balm, cannabis flower Sunshine Kush, Purple Punch Rick Simpson Oil, and specialty ribbon chews 200mg THC chill medicated lozenges.  (*Id.* ¶ 9.)  She alleges, however, that the supply of medical marihuana is insufficient because "[a] de minimus amount of grower, processor, transport, and testing facilities have been approved by LARA to operate under the MMFLA" and that a "lack of access to medical marijuana" has adversely affected her health.  (*Id.* ¶¶ 10-12, 20.)  Specifically, she contends that "LARA has only granted provisioning center licenses to 94 operations, grow licenses to 68 operations, processing licenses to 12 individuals, secure transporting licenses to seven operations, and testing licenses to only four safety compliance centers," which is "clearly insufficient to supply the tens of thousands of pounds [of] medical

marijuana for the 300,000+ Michigan medical marijuana patients per month, leaving medical marijuana patients without a means to fulfill their medicinal needs." (*Id.* ¶¶ 27-28.) Plaintiff alleges that the lack of access to her medical marihuana regimen affects her health and well-being by failing to alleviate her pain, nausea, insomnia and decreased appetite from chemotherapy treatments. She claims that her health and quality of life are deteriorating. (*Id.* ¶¶ 8-11.)

According to Plaintiff, LARA established Emergency Rules, with regard to the MMFLA, to prevent harm to Michigan residents "due to the delays … experienced in reviewing applications under the MMFLA" "until the medical marijuana supply-chain is established in Michigan." (*Id.* ¶¶ 13-14.) She contends that these Emergency Rules allowed for LARA and the Board to adopt resolutions that allowed licensed provisioning centers to purchase and sell untested marihuana outside the regulatory system, but that, with the expiration of the Board Resolutions on March 31, 2019, licensed provisioning centers are no longer able to do so. (*Id.* ¶ 15-16.) This, Plaintiff claims, has resulted in her inability to access her medical marihuana medications. She asserts that "[w]ithout such supply of product the medical marijuana industry will end." (*Id.* ¶ 23.)

Plaintiff alleges that medical marihuana continues to be sold to unlicensed facilities who are unregulated and do not need to purchase tested marihuana under the MMFLA, but that if she purchased from, or was even present in, one of these

8

unlicensed operations she risks losing her medical marihuana card. (*Id.* ¶¶ 31-32.) She contends that LARA can "cure" this issue by "modifying and extending the Emergency Rules to December 31, 2019 to allow Plaintiff to purchase untested medical marihuana from licensed caregivers directly from licensed provisioning centers." (*Id*. ¶ 33.) In her Complaint, Plaintiff asks the Court to declare that the MMMA represents an unconstitutional violation of her due process rights under the United States and Michigan constitutions, and seeks declaratory and injunctive relief requiring LARA to "extend[] the Emergency Rules" to allow licensed provisioning centers to purchase marihuana from unregulated caregivers and sell it untested to patients until December 31, 2019, or until Plaintiff and others can "obtain sufficient … supply" via the newly regulated supply chain. (*Id.* ¶¶ 46-72.)

### C. Plaintiff's Emergency Motion for *Ex Parte* Temporary Restraining Order, Preliminary Injunction and Declaratory Relief is Denied

On June 5, 2019, the same day Plaintiff filed her Verified Complaint for Declaratory Judgment and Injunctive Relief, she also filed an Emergency Motion for *Ex Parte* Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief. (ECF No. 2, Pl.'s TRO.) The Court allowed briefing on Plaintiff's motion and held a hearing on July 17, 2019. On July 18, 2019, the Court issued an Opinion and Order denying Plaintiff's motion, finding that Plaintiff had no likelihood of success on the merits of her claims because Defendant LARA is a state agency entitled to absolute Eleventh Amendment immunity. (ECF No. 23.)

9

### D.     Defendant's Motion to Dismiss

Defendant filed its Motion to Dismiss on June 26, 2019, arguing that Plaintiff's Complaint should be dismissed for the following reasons: (1) Plaintiff's claims are barred because LARA is immune from suit; (2) the Court lacks subject matter jurisdiction over Plaintiff's claims because they fail to allege a colorable federal question; (3) Plaintiff lacks standing to bring this action because her injuries are not traceable to or redressable by LARA; (4) Plaintiff's claims lack substantive merit; (5) the Court should abstain from interfering in a complex state regulatory scheme; and (6) Plaintiff has failed to state a claim for declaratory relief. (ECF No. 10, Def.'s Mot.)

On July 24, 2019, Plaintiff filed a response in opposition to Defendant's motion to dismiss, arguing that: (1) Defendant is not immune from suit because of the *Ex parte Young* exception to Eleventh Amendment immunity; (2) she has alleged a colorable federal question claim and her claims do not lack merit; (3) she has standing to bring this action; (4) her procedural due process claim is valid; and (5) the Court should not abstain from reviewing her claims. (ECF No. 25, Pl.'s Resp.) Plaintiff further requests in the alternative, if necessary, that the Court grant her leave to amend her complaint. (*Id.*)

In reply, Defendant asserts that: (1) Plaintiff's claims do not fall within the *Ex parte Young* exception to sovereign immunity; (2) the Court lacks subject matter

jurisdiction because Plaintiff failed to allege a colorable federal question; (3) Plaintiff lacks standing; (4) the Court should abstain; (5) Plaintiff does not contest that she is not entitled to declaratory relief; (6) her claims lack substantive merit; and (7) the Court should deny Plaintiff's request to amend her complaint. (ECF No. 26.)

### E. Supplemental Briefing

On December 2, 2019, the Court issued an order permitting the parties to file supplemental briefing "addressing the impact of recent developments regarding marihuana in Michigan on Defendant's motion to dismiss." (ECF No. 31.) The parties filed supplemental briefs on December 10, 2019.

Defendant contends that "[w]hile there have been developments in Michigan's regulation of marihuana, none are material" to its motion to dismiss, which should be granted because LARA is immune from suit, and for the additional reasons outlined in its motion to dismiss. (ECF No. 32, Def.'s Supp. Brief at 1, PgID 542.) Specifically, Defendant claims:

> There have been four key developments since Plaintiff filed her complaint: (1) The … (MRA) issued additional medical marihuana licenses…. (2) The MRA began issuing adult-use (recreational) marihuana establishment licenses…. (3) The MRA issued two sets of emergency rules to prohibit the addition of and require testing for inactive ingredients recently linked to vaping-related lung injuries and deaths…. [and] (4) The MRA announced that starting on December 1, those licensed on both sides of the industry may transfer up to 50 percent of any medical marijuana product type into the adult-use system—provided the licensee receives written permission from the MRA, the product has been in inventory for at least 30 days, and the product has passed all required tests….

11

(Def.'s Supp. Brief at 3, fn.2, PgID 544.)  Defendant asserts that none of these developments preclude dismissal of Plaintiff's complaint, and that because Plaintiff's complaint only "requests to 'modify and extend' long-expired emergency rules 'to December 31, 2019, [] to avoid irreparable harm,'" "Plaintiff's claims will become moot as of January 1, 2020." (*Id.* at 4, PgID 545.)

Plaintiff argues in her supplemental brief that "there is still not enough product for either medical, and now recreational, [marihuana] to be readily available to patients and purchasers." (ECF No. 33, Pl.'s Supp. Brief at 4, PgID 589.)  She further contends that "the MRA is an agency within LARA," and that "because the MRA inherited all of LARA's authorities, powers, duties, functions, and responsibilities and it shall exercise them appropriately—including the applicable rulemaking—an order of this Court would have to be followed by the MRA (housed within LARA), which would redress Plaintiff's injuries." (*Id.* at 5, PgID 590.) Plaintiff also argues that her claims are not moot "as she continues to seek immediate relief without a timetable." (*Id.*)

### F.    Prior Michigan State Court Lawsuit

A different plaintiff seeking the same relief that Plaintiff seeks here previously filed suit in the Michigan courts, but was denied relief.  In *The Curing Corner, LLC v. Michigan Department of Licensing and Regulatory Affairs*, No. 19-000052-MZ (Mich. Ct. of Claims, Apr. 30, 2019), Judge Stephen L. Borello explains in his

opinion that the Curing Corner plaintiff was asking that the court "essentially require LARA to extend previous iterations of now-expired emergency rules." (ECF No. 11-1, Def.'s Mot. Appendix Ex. 1, April 30, 2019 Opinion and Order at 10, PgID 428.) In his opinion, Judge Borello states: "[T]he Court is without authority to grant the relief plaintiff Curing Corner requests and it will not dictate to LARA procedures for the sale of marijuana." (*Id*. at 10-11.) Plaintiff Curing Corner was represented by the same counsel representing Plaintiff here, Ms. Donovan. No appeal was ever taken from Judge Borello's opinion denying the very relief sought here. Instead, Plaintiff brought her claims to this Court and sued LARA – a state agency.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Under a factual attack, however, "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id*. Where the defendant brings a factual attack on the subject matter jurisdiction, "no presumptive

truthfulness applies to the allegations" of the complaint and the court may consider documentary evidence in conducting its review. *Id.* If the district court must weigh conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist, it "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*.

## B. Motion to Dismiss for Failure to State A Claim: Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the

elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records,

matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

## III.  ANALYSIS

### A.  Eleventh Amendment Immunity

Defendant argues that Plaintiff's claims against it are barred by Eleventh Amendment immunity. (Def.'s Mot. at 7-8, PgID 268-69.) Defendant is correct. Indeed, as this Court already expressly found when denying Plaintiff's Motion for Temporary Restraining Order:

> It is undisputed that LARA is a state agency entitled to absolute immunity from suit under the Eleventh Amendment. The Sixth Circuit long ago acknowledged the breadth of this immunity in *Thiokol Corp.*

*v. Department of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376 (6th Cir. 1993):

> The Eleventh Amendment provides:
>
> > The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.
>
> U.S. Const. amend. XI. This immunity is far reaching. It bars *all* suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100–01, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), by citizens of another state, foreigners or its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

987 F.2d at 381 (emphasis added). *See Proctor v. Board of Medicine*, 718 F. App'x 325, 327 (6th Cir. 2017) (holding that the Michigan Department of Licensing and Regulatory Affairs and the Board of Medicine were "clearly agencies or departments of the State of Michigan" and were "entitled to immunity under the Eleventh Amendment"); *Williams v. Mich. Bd. of Dentistry*, 39 F. App'x 147, 148-49 (6th Cir. 2002) (observing that "unless immunity is expressly waived, a state and its agencies are immune from an action for damages and injunctive relief, and in some cases even declaratory relief, in federal court" and that "the Eleventh Amendment forbids federal courts from intruding upon state sovereignty by dictating the manner in which state officials should comply with state law") (internal quotation marks and citations omitted). "There are three exceptions to a state's sovereign immunity." *Puckett v. Lexington-Fayette Urban County Government*, 833 F.3d 590, 598 (6th Cir. 2016) (noting the three narrow exceptions to Eleventh Amendment immunity as "(1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, applies; and (3) when Congress has clearly and expressly abrogated the state's immunity.") (internal citations omitted). None of these exceptions is claimed to or does apply here.

(ECF No. 23, Opinion and Order Denying Plaintiff's Emergency Motion for *Ex Parte* Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief, at 14-15, PgID 474-75.)

Plaintiff contends in response, despite the Court's express prior ruling that none of the exceptions to Eleventh Amendment immunity apply in this case, that her claims may proceed because they fall within the *Ex parte Young* exception to sovereign immunity. (Pl.'s Resp. at 5-9, PgID 490-94.) Under *Ex parte Young*, the Eleventh Amendment "does not preclude actions against *state officials* sued in their official capacities for prospective injunctive or declaratory relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (emphasis added, citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception permits a federal court to "compel[] a *state official* to comply with federal law." *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 417 (6th Cir. 2019) (emphasis added, citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989)). "Under the doctrine developed in *Ex parte Young* and its progeny, a suit that claims that a state official's actions violate the constitution or federal law is not deemed a suit against the state, and so barred by sovereign immunity, *so long as the state official is the named defendant* and the relief sought is only equitable and prospective." *Westside Mothers v. Haveman*, 289 F.3d 852, 860-61 (6th Cir. 2002) (emphasis added). However, "*Ex parte Young* permits only lawsuits that can

be meaningfully described as being against the named official, not those that 'merely mak[e] him a party as a representative of the state, and thereby attempt[] to make the state a party.'" *McNeil v. Community Probation Servs., LLC*, --- F.3d ---, No. 19-5262, 2019 WL 7043172, at *4 (6th Cir. Dec. 23, 2019) (quoting *Ex parte Young*, 209 U.S. at 157). Here, Plaintiff has not sued a single state official, in his or her official capacity or otherwise (nor has she even proposed a state official she would properly name), and her "desire to expand the well-established fiction of *Ex parte Young*, which treats suits against *state officers* as 'not a suit against the state,' *Ex parte Young*, 209 U.S. at 154, by treating a suit against *state departments* as 'not a suit against the state' is contrary to binding Supreme Court and Sixth Circuit precedent." *Proctor v. Board of Medicine*, 718 F. App'x 325, 328 (6th Cir. 2017) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100; *Thiokol*, 987 F.2d at 381).

Plaintiff cites to *Rainey v. Wayne State University*, 26 F.Supp.2d 973 (1998) (Steeh, J.) for its finding that the court "retains jurisdiction over plaintiff's copyright infringement claim against [Wayne State University] for injunctive relief under the *Ex parte Young* doctrine." (Pls. Resp. at 5-7, PgID 490-92, citing *Rainey*, *supra*, at 976 (although the court nevertheless subsequently dismissed this claim as moot).) While the court in *Rainey* stated that "[a] claim that seeks to enjoin *a state instrumentality or* state officer from violating federal law, however, is exempt from

19

Eleventh Amendment immunity under *Ex parte Young*," *Rainey*, 26 F.Supp.2d at 975 (emphasis added, citations omitted), subsequent decisions have held that Wayne State University is an arm of the state entitled to Eleventh Amendment immunity. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775-76 (6th Cir. 2015) (collecting cases holding that Wayne State University is an arm of the state for purposes of Eleventh Amendment immunity). The Supreme Court has made clear that the *Ex parte Young* exception "has no application in suits against the States *and their agencies*, which are barred *regardless of the relief sought*." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (emphases added) (concluding that "the district court abused its discretion by exercising jurisdiction over the two state agency defendants, which enjoy sovereign immunity against such exercise of jurisdiction"); *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 431 (1997) (emphasizing that, even though there is no real risk of state financial responsibility, entities that are clearly part of the state, such as a state university, are entitled to Eleventh Amendment immunity).[4] The Sixth Circuit has similarly

---

[4] On the other hand, the Sixth Circuit explained in *Lowe v. Hamilton County Department of Job & Family Services*, 610 F.3d 321 (6th Cir. 2010), "[o]ne of the more prominent exceptions to the doctrine [of Eleventh Amendment sovereign immunity] is that state instrumentalities *that properly are characterized as political subdivisions [i.e., a county], rather than arms of the state*, are not entitled to sovereign immunity." *Id.* at 324-25 (emphasis added). LARA is not "properly … characterized as [a] political subdivision[]" but rather is a state agency and thus is entitled to Eleventh Amendment immunity.

emphasized that *Ex parte Young* authorizes "an injunction against a state official who has acted unconstitutionally," but does not overcome the Eleventh Amendment immunity that "prohibits a federal court from granting even this [injunctive] relief against a state or a state agency." *Freeman v. Michigan Dep't of State*, 808 F.2d 1174, 1179 (6th Cir. 1987); *see also Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 417 (6th Cir. 2019) ("[T]he *Ex parte Young* exception applies only to the individual state officers" and not to the state instrumentality defendants); *Proctor*, 718 F. App'x at 328 ("Proctor's claim does not fall with[in] the exception to sovereign immunity announced in *Ex parte Young* because he failed to sue a state official in her or her official capacity."); *Ali v. Univ. of Mich. Health System-Risk Mgmt.*, 523 F. App'x 319, 320 (6th Cir. 2013) ("The Board of Regents, as a state instrumentality, is entitled to Eleventh Amendment immunity[.]"); *Peoples v. Michigan Dep't of Corrs.*, 2000 U.S.App. LEXIS 4971, at *4 (6th Cir. Mar. 21, 2000) ("When the State or one of its agencies or departments is named as the defendant in a federal suit, the Eleventh Amendment applies regardless of whether the suit seeks injunctive or monetary relief."). Therefore, as in *Proctor*, Plaintiff's "desire to expand the well-established fiction of *Ex parte Young*" "by treating a suit against a *state department* as 'not a suit against the state' is contrary to binding Supreme Court and Sixth Circuit precedent." *Proctor*, 718 F. App'x at 328 (citing *Pennhurst*, 465 U.S. at 100); *see also Emery v. Mich. Dep't of Civil Rights*, No. 15-

11467, 2016 WL 1090429, at *3 (E.D. Mich. Mar. 21, 2016) (Rosen, J.) ("Notwithstanding *Ex parte Young*, then, the state agency … enjoys Eleventh Amendment immunity from Plaintiff's ADA [and state law] claims in their entirety, without regard for the relief sought by Plaintiff.") (citations omitted).

Accordingly, Plaintiff's claims in this case are barred by Eleventh Amendment immunity. Defendant's motion to dismiss therefore is granted and Plaintiff's claims are dismissed without prejudice. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice.") (citing *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005)).

## B. Federal Question/Failure to State a Fourteenth Amendment Due Process Claim

Defendant argues that dismissal is also warranted under Rule 12(b)(1) because Plaintiff failed to allege a colorable federal question (Def.'s Mot. at 9-10, PgID 270-71), and under Rule 12(b)(6) for failure to state a federal due process claim. (*Id.* at 14, PgID 275.) Specifically, Defendant argues that Plaintiff's due process claim – that Defendant deprived her of the choice to purchase untested marihuana supplied by a caregiver to a licensed provisioning center (citing Compl. ¶¶ 50, 52) – is hardly colorable and/or fails to state a claim because Plaintiff has no property right to medical marihuana, which is designated as "contraband for any purpose" under federal law. (*Id.* at 9-10, PgID 270-71.) Defendant argues that Plaintiff is merely

attempting to "federalize" alleged violations of the MMMA, MMFLA and Michigan constitution.  (*Id.*)

Plaintiff responds that her medical marihuana patient identification card is a property right and that she has been denied "her right and privilege to obtain medical marijuana at the licensed provisioning centers."  (Pl.'s Resp. at 11-12, PgID 496-97.)   In support of her contention that she has stated a Fourteenth Amendment Due Process claim, she cites to *United States v. Barry*, 673 F.2d 912 (6th Cir. 1982), wherein the Sixth Circuit stated it will "not deny [defendant] a [Fourth Amendment] privacy interest solely on the often advanced principle that one can have no legitimate property interest in contraband."  (*Id.* at 16-17, PgID 501-02, citing *Barry*, 673 F.2d at 918.)  Plaintiff also cites to *United States v. Walsh*, 654 F. App'x 689, 695-97 (6th Cir. 2016), which precluded defendants from introducing evidence that they had complied with Michigan's medical marihuana statute. (*Id.*) Plaintiff merely asserts that the *Walsh* court "raised no concerns on ruling on the issue."  (*Id.*) Plaintiff also cites to *United States v. Trevino*, 355 F.Supp.3d 625, 629 (W.D. Mich. 2019), for recognizing that Congress "intended to block prosecutions of private individuals who were following state medical marijuana law." (*Id.*)  Plaintiff failed, however, to cite any case law finding that an individual had a Fourteenth Amendment "property right" to medical marihuana.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. There are two types of claims that arise under the Due Process Clause, procedural due process and substantive due process.  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  "[B]oth substantive and procedural due-process claims require the deprivation of a liberty or property interest."  *Id.*  "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law….'"  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citations omitted).  However, federal constitutional law determines whether a particular substantive interest created by the state rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.  *Memphis Light Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).  Additionally, the Supremacy Clause unambiguously provides that, if there is any conflict between federal and state law, federal law prevails.  *Gonzales v. Raich*, 545 U.S. 1, 29 (2005) ("It is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants, however legitimate or dire those necessities may be.") (citation and internal quotation marks omitted).

Accordingly, although the MMMA provides narrow exceptions for marihuana use involving qualified patients and care givers,[5] under the federal Controlled Substances Act ("CSA"), it is illegal for any private person to possess marihuana for any purpose.  21 U.S.C. §§ 812(c), 841(a)(1), 844(a); *see also Raich*, 545 U.S. at 27; *United States v. Jeffers*, 342 U.S. 48, 53 (1951) (holding that no person can have a legally protected interest in contraband per se); *see also Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) (holding that medical marijuana consumption does not meet the demanding burden for a substantive due process right because it is not so fundamental as to be "implicit in the concept of ordered liberty").  Thus, under federal law, marihuana is contraband per se, which means that no person can have a cognizable legal interest in it.  *Raich*, 545 U.S. at 27.

Plaintiff claims in her response that her "medical marijuana patient identification card is a property right" and that she "has been denied her right and privilege to obtain her medical marijuana at the licensed provisioning centers" without due process.  (Pl.'s Resp. at 11-12, PgID 496-97.)  A number of other federal district courts have considered this same issue under other state's laws and held that a plaintiff has no cognizable Fourteenth Amendment property interest in marihuana.  *See Marble v. Strecker*, No. CV 13-00186, 2014 U.S. Dist. LEXIS 50770, at *22 (D.

---

[5] *See, e.g.,* Mich. Comp. Law § 333.26428 (providing that "a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana" in certain circumstances).

Mont. Feb. 26, 2014) (holding that plaintiff did not have a "federal property interest" in marihuana or a state issued marihuana card because marihuana is contraband per se under federal law); *see also River N. Prop., L.L.C. v. City and Cty. of Denver*, No. 13-cv-10410-CMA-CBS, 2014 WL 7437048, at \*3 (D. Colo. Dec. 30, 2014) ("Because marijuana is contraband *per se* under federal law, Plaintiff lacked a cognizable property interest in its cultivation [or possession] under Section 1983."); *id.* (citing 21 U.S.C. § 881(a)(8) ("The following shall be subject to forfeiture to the United States and *no property right shall exist in them*: … All controlled substances which have been possessed in violation of this subchapter.") (emphasis added)); *accord Young v. Larimer Cty. Sheriff's Office,* 2014 COA 119, ¶ 14 (holding that, notwithstanding the medical marijuana provisions of the Colorado constitution, a plaintiff could not seek relief under section 1983 for the state's destruction of marihuana plants "because that destruction did not impair a federal right"); *Barrios v. Cty. of Tulare,* No. 1:13–CV–1665, 2014 WL 2174746, at \*5 (E.D. Cal. May 23, 2014) ("Because marijuana is contraband under federal law, [plaintiff] had no property interest in the marijuana that was protected by the Fourteenth Amendment due process clause"); *Staffin v. Cty. of Shasta,* No. 2:13–cv–00315, 2013 WL 1896812, at \*3 (E.D. Cal. May 6, 2013) (same*); Schmidt v. Cty. of Nev.*, No. 2:10–CV–3022, 2011 WL 2967786, at \*6 (E.D. Cal. July 19, 2011) (same)). In addition, "[e]very court to consider the specific, carefully framed right at issue here has held

that there is no substantive due process right to use medical marijuana." *Washington*

*v. Sessions*, No. 17 Civ. 5625, 2018 WL 1114758, at *9 (S.D.N.Y. Feb. 26, 2018)

(collecting cases); *see also Krumm v. Holder*, No. 13cv0562 RB/SMV, 2014 WL

11497804, at *6 (D.N.M. Mar. 19, 2014) (collecting cases across the country holding

that "smoking, using, possessing, or manufacturing marijuana is not a fundamental

right" protected by substantive due process).

Accordingly, Plaintiff has no constitutionally protected interest in marihuana

or her patient identification card protectable by the Fourteenth Amendment.

Plaintiff's Fourteenth Amendment claim fails as a matter of law and she has failed

to assert a colorable federal cause of action. No amendment can cure this defect and

accordingly dismissal of Plaintiff's Fourteenth Amendment claims without leave to

amend is appropriate.

In view of the foregoing, the Court need not address Defendant's remaining

arguments for dismissal.

### C.    Plaintiff's Request for Leave to Amend

Plaintiff summarily requests in her response brief, "in the alternative," that

"the Court grant leave to Plaintiff to amend her Verified Complaint as necessary

given the Court's ruling," or "in order to name the proper additional party or parties."

(Pl.'s Resp. at 1, 16, PgID 486, 501.)

As a general matter, Federal Rule of Civil Procedure 15(a) directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Sixth Circuit precedent is clear, however, that "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought ... does not constitute a motion within the contemplation of Rule 15(a)." *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004)); *see also Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) ("Plaintiffs are not entitled to a directive from the district court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies. [B]ecause Plaintiffs' request was perfunctory and did not point to any additional factual allegations that would cure the complaint, the district court did not abuse its discretion in denying a motion to amend.") (internal quotation marks and citations omitted); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("Both because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint based on the final sentence of the plaintiffs' memorandum in opposition.").

In addition, the Court should deny leave to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Plaintiff has offered no specific indication as to *how* she would amend her Complaint. Nor did Plaintiff move to amend her Complaint in her Response and "attach the proposed amended pleading to the motion" as required under Eastern District of Michigan Local Rule 15.1.  Accordingly, Plaintiff's request for leave to amend is denied.  Moreover, even if Plaintiff was allowed to identify and substitute defendants (state officials sued in their official capacities for prospective relief, in an attempt to avoid Eleventh Amendment immunity), for the reasons explained above, Plaintiff's claims nevertheless are futile, and justice does not require granting Plaintiff leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 10) is GRANTED and Plaintiff's request in her response brief for leave to amend her Complaint is DENIED.

IT IS SO ORDERED.

s/Paul D. Borman

Dated: January 15, 2020     Paul D. Borman
             United States District Judge